**WINDTBERG & ZDANCEWICZ, PLC**
7551 South Willow, Suite 102
Tempe, Arizona 85283
Phone: (480) 584-5660
Fax: (480) 584-5958
courtdocs@wzfirm.com

Michael Zdancewicz - 12426
Marc Windtberg - 24802

Attorneys for Capital One Auto Finance, a
division of Capital One N.A.

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Terry Wheelington,<br><br>      Debtor. | No. 2:16-bk-08057-SHG<br><br>**Chapter 13 Proceeding**<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br>**And**<br>**MOTION FOR RELIEF FROM THE CODEBTOR STAY** |
| Capital One Auto Finance, a division of Capital One N.A.,<br><br>      Movant,<br>v.<br><br>Terry Wheelington,<br><br>      Respondent. | **Property Description:**<br><br>2012 Nissan Altima VIN 1N4AL2AP8CN456067<br><br>**(hereafter the "Collateral")** |

     Capital One Auto Finance, a division of Capital One N.A. (hereafter the "**Movant**" or "**Secured Creditor**") is a secured creditor possessing a lien upon property more particularly described below. Movant contends it is entitled relief from the automatic stay and the Codebtor Stay because the contract secured by the Collateral is in default. Relief is requested under 11 U.S.C. §362(d)(1) and (d)(2) and (h)(1) and 1301. Movant requests the

court to find:

    a.    That cause exists to terminate the automatic stay;

    b.    That cause exists to terminate the codebtor stay;

    c.    If the Court declines to lift the stay immediately, adequate protection payments be made pursuant to Bankruptcy Code § 361;

    d.    Waiving the fourteen (14) day provision of Bankruptcy Rule 4001(a)(3) that would stay the effectiveness of any Order is appropriate;

    e.    That any Order lifting the stay will be binding in the event this matter is converted to another proceeding under the Bankruptcy Code; and,

    f.    That Movant may file an amended proof of claim for any deficiency balance within thirty (30) days of disposition of the Collateral, or by the claims bar date, whichever is later.

The following Memorandum of Points and Authorities support this Motion.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

    1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(G) and 11 U.S.C. § 362.

    2.    **Terry Wheelington** (the "**Debtor**") and Tracey M. Wheelington ("**Codebtor**") executed and delivered to Secured Creditor a contract (hereafter the "**Contract**").

    3.    Repayment of all amounts due on the Contract is secured with the following described collateral:

**2012 Nissan Altima VIN 1N4AL2AP8CN456067**

(hereafter referred to as the "**Collateral**")

    4.    Exhibit 1 is a true and correct copy of the Contract and it is incorporated herein by reference.

5.      The Secured Creditor's lien on the Collateral is properly perfected. See Exhibit 2: Records from the Arizona Department of Transportation, Motor Vehicle Division reflecting Secured Creditor's lien.

6.      Movant is the owner and holder of the Contract and the documents securing repayment of all amounts due.

7.      Payments have not been made pursuant to the terms of the Contract.

8.      The failure to make timely payments prejudices Secured Creditor.

9.      Payments are due under the Contract for the month of April 2017 and for each month thereafter.

10.     Payments are in arrears in the amount of $2,059.94.

11.     There is little or no equity in the Collateral.

12.     The amount of the debt as of the date of the filing of this Motion is $7,038.55

13.     The Kelley Blue Book values the Collateral at $4,631.00. See Exhibit 3: Valuation Evidence.

14.     Movant is entitled to relief from the Automatic Stay for cause, because payments are not being received in accordance with the Contract.

15.     Movant is entitled to an award of its reasonable attorney's fees.

16.     Movant further request the Court waive the provisions of Bankruptcy Rule 4001(a)(3), which would stay the order for relief until the expiration of 14 days after the entry of the order.

17.     Movant requests proof of insurance be provided. If proof of insurance is not provided, Movant asserts as an additional ground for stay relief, the failure to provide insurance on the Collateral.

## LEGAL ANALYSIS

Pursuant to Bankruptcy Code § 362(d)(1) and 1301, relief from the automatic stay shall be granted "for cause," including, without limitation, lack of adequate protection.

*See*, 11 U.S.C. §362(d)(1).

In addition, a party with an interest in property is entitled to relief from the automatic stay if: (i) the debtor lacks equity in the property, *and* (ii) the property is not necessary for an effective reorganization that is in prospect. *See*, 11 U.S.C. § 362(d)(2); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S. Ct. 626, 98 L.Ed.2d 740 (1988).

Movant seeks relief from the Codebtor Stay to allow Movant to exercise its rights in the Collateral.

## A. Sufficient "Cause" Exists to Grant Relief from The Automatic Stay.

Pursuant to 11 U.S.C. § 362(d)(1), a party-in-interest may be granted relief from the automatic stay for cause. The term "cause" is not defined in the Bankruptcy Code and must be determined on a case by case basis. *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985) (citations omitted); *see also In re Delaney-Morin*, 304 B.R. 365, 369 (9th Cir. B.A.P. 2003).

## B. Secured Creditor Is Not Adequately Protected.

A lack of adequate protection is specifically identified in § 362(d)(1) as cause for relief from the automatic stay. The debtor has the burden to prove no cause exists to terminate the automatic stay, including whether Secured Creditor's interest in the Collateral is adequately protected. *See In re Sun Valley Ranches, Inc.,* 823 F.2d 1373, 1376 (9th Cir. 1987); *In re Ellis,* 60 B.R. 432, 435 (9th Cir. B.A.P. 1985).

Pursuant to 11 U.S.C. § 362(g)(2), the burden of proving that Secured Creditor is adequately protected rests with the Debtor in Bankruptcy. Based on all the foregoing, Secured Creditor's interest in the Collateral is not being protected.

## C. Secured Creditor is entitled to Adequate Protection Payments.

If the Court declines to award immediate stay relief, Movant requests that the Court award Secured Creditor adequate protection pursuant to 11 U.S.C. § 361 to protect against

00231544-2

depreciation of the Collateral. While the term "adequate protection" is not defined in the Code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: (1) periodic cash payments equivalent to decrease in value; (2) an additional or replacement lien on other property; or (3) other relief that provides the indubitable equivalent. 11 U.S.C. § 361; *In re Mellor,* 734 F.2d 1396, 1400 (9th Cir. 1984). Movant is entitled to adequate protection pursuant to § 361 because the value of the Collateral is declining during the pendency of the case.

**D. Termination of the Stay is Appropriate Under 11 U.S.C. § 362(d)(2) Because There is No Equity in the Collateral and There is No Reorganization.**

As alternative grounds for relief from the automatic stay, Movant alleges that there is no equity in the Collateral, and the Collateral is not necessary for an effective reorganization. Pursuant to 11 U.S.C. § 362(d)(2), a party in interest may be granted relief from the automatic stay if: (i) the debtor does not have equity in the property; and (ii) the property is not necessary for an effective reorganization. Once the Movant establishes that there is no equity in the Property, "it is the burden of the debtor to establish that the collateral at issue is 'necessary to an effective reorganization.'" *Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. at 375-376. "What this requires is not merely a showing that if it is conceivable to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization <u>that is in prospect</u>." *Id.* (emphasis original). Furthermore, there must be "a reasonable possibility of successful reorganization within a reasonable time." *Id.* Debtors can make no such showing.

## REQUEST FOR RELIEF

For the reasons set forth above, Movant respectfully requests the following:

A. That cause exists to terminate the automatic stay;

B. That cause exists to terminate the codebtor stay;

C. If the Court declines to lift the stay immediately, adequate protection payments be made pursuant to Bankruptcy Code § 361;

D. Waiving the fourteen (14) day provision of Bankruptcy Rule 4001(a)(3) that would stay the effectiveness of any Order is appropriate;

E. That any Order lifting the stay be binding in the event this matter is converted to another proceeding under the Bankruptcy Code; and

F. That Movant may file an amended proof of claim for any deficiency balance within thirty (30) days of disposition of the Collateral, or by the claims bar date, whichever is later.

Dated: July 7, 2017.

WINDTBERG & ZDANCEWICZ, PLC
/s/ Michael Zdancewicz (#012426)
Michael Zdancewicz
Marc Windtberg
7551 South Willow, Suite 102
Tempe, Arizona 85283
Attorneys for Capital One Auto Finance, a division of Capital One N.A.

Certificate of Service

I certify that on July 7, 2017, a true and correct copy of the above and foregoing was served upon the following parties via electronic means as listed on the Court's ECF noticing system, if available, otherwise by regular first-class mail:

| | |
|---|---|
| Russell Brown<br>Chapter 13 Trustee<br>3838 North Central Avenue, Suite 800<br>Phoenix, AZ 85012-1965 | Lawrence Pew<br>Pew Law Center, PLLC<br>1811 S. Alma School Rd., #260<br>Mesa, AZ 85210 |
| Terry Wheelington<br>15977 W. Latham St.<br>Goodyear, AZ 85378 | Tracey M. Wheelington<br>5512 NW 86th Ct.<br>Kansas City, MO 64154-0000 |

/s/ Michael Zdancewicz

0023154472

# EXHIBIT 1

# Retail Installment Contract and Security Agreement

Seller Name and Address

RANDY REED NISSAN
9600 Northwest Prairie View
Kansas City, MO 64153

Buyer(s) Name(s) and Address(es)

TRACEY M WHEELINGTON
TERRY D WHEELINGTON
5512 NW 86TH CT
KANSAS CITY, MO 64154-0000

No. _____

Date 01/18/12

☐ Business, commercial or agricultural purpose Contract. ☐ Refer to the attached addendum for additional Buyers and their signatures.

## Truth-In-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. | The total cost of your purchase on credit, including your down payment of $3,500.00 |
| 14.2% | $ 13,300.76 | $ 26,531.00 | $ 39,839.76 | $ 43,339.76 |

**Payment Schedule.** Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | 553.33 | MONTHLY, BEGINNING 03/03/12 |
| | N/A | |
| | $ | N/A |
| | $ | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If you fail to pay your scheduled payment, in full, within 10 days of its due date, you agree to pay 1. a late charge of $5.50, if the amount of your scheduled payment is $25.00 or less, 2. otherwise, a late charge of 5% of the amount of your scheduled payment, subject to a minimum late charge of $10.00 and a maximum late charge of $25.00.

**Prepayment.** If you pay off this Contract early, you ☐ may ☐ will not have to pay a Minimum Finance Charge.

**Filing Fees.** $ _____ N/A

**Contract Provisions.** You can see the terms of this Contract for any additional information about prepayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2012 | NISSAN | ALTIMA | 4DR SDN 14 CVT | 1N4AL2AP8CN456067 | 53 |

☐ New ☒
☐ Used
☐ Demo

Other: _____

## Description of Trade-In

### Conditional Delivery

☐ **Conditional Delivery. A Conditional Delivery Agreement** is being signed along with this Contract. The Conditional Delivery Agreement is incorporated by reference into this Contract, and a copy of the Conditional Delivery Agreement is attached to this Contract.

### Itemization of Amount Financed

| | | |
|---|---|---|
| a. Price of Vehicle, etc. (retail, sales tax of $ _____ N/A) | $ | 26,632.00 |
| b. Service Contract, paid to NISSAN ESC | $ | 2,441.00 |
| c. Cash Price (a+b) | $ | 29,073.00 |
| d. Trade-in allowance | $ | N/A |
| e. Less: Amount owing, paid to (builtout) $ | $ | N/A |
| f. Net trade-in (d-e; if negative, enter $0 here and enter the amount on line f) | $ | 0.00 |
| g. Cash payment | $ | 2,000.00 |
| h. Manufacturer's rebate | $ | 1,500.00 |
| i. Deferred down payment | $ | N/A |
| j. Down payment (f+g+h+i) | $ | 3,500.00 |
| k. Unpaid balance of Cash Price (c-j) | $ | 25,573.00 |
| l. Financed trade-in balance (see line f) | $ | N/A |
| m. Paid to public officials - filing fees | $ | N/A |
| n. Insurance premiums | $ | N/A |
| o. Administrative Fee | $ | 199.00 |
| p. GAP Ins. | $ | 749.00 |
| q. Temp Tag | $ | 7.50 |
| r. Title Fee | $ | 2.50 |
| s. | $ | N/A |
| t. | $ | N/A |
| u. | $ | N/A |
| v. | $ | N/A |
| w. | $ | N/A |
| x. Total Other Charges/Amts Paid (l thru v) | $ | 958.00 |
| y. Prepaid Finance Charge | $ | N/A |
| z. Amount Financed (k+w-x) | $ | 26,531.00 |

We may retain or receive a portion of any amounts paid to others, except those fees paid to public officials.

AN ADMINISTRATIVE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW BUT MAY BE CHARGED BY A DEALER. THIS ADMINISTRATIVE FEE MAY RESULT IN A PROFIT TO DEALER. NO PORTION OF THIS ADMINISTRATIVE FEE IS FOR THE DRAFTING, PREPARATION, OR COMPLETION OF DOCUMENTS OR THE PROVIDING OF LEGAL ADVICE. THIS NOTICE IS REQUIRED BY LAW.

### Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**
☐ Single ☐ Joint ☐ None ☒
Premium $ _____ N/A Term _____ N/A
Insured _____

**Credit Disability**
☐ Single ☐ Joint ☐ None ☒
Premium $ _____ N/A Term _____ N/A
Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: _____ DOB _____

By: _____ DOB _____

**Property Insurance.** You must insure the Property securing this Contract. You understand that you are free to insure your Property with whatever licensed company, agent or broker you may choose, that you may do so at any time after the date of the loan, that you have not cancelled any existing insurance on your Property if you owned it before this loan; and that this loan cannot be denied you simply because you did not purchase your insurance through us. **YOU MAY NOT NEED TO PURCHASE CREDIT PROPERTY INSURANCE, AND YOU MAY HAVE OTHER INSURANCE WHICH WE WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. YOU SHOULD EXAMINE ANY OTHER INSURANCE WHICH YOU HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY.**

This premium is calculated as follows:
☐ $ _____ N/A Deductible, Collision Cov. % _____ N/A
☐ $ _____ N/A Deductible, Comprehensive % _____ N/A
☐ $ _____ N/A Fire-Theft and Combined Additional Cov. % _____ N/A

**Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.**

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ _____ N/A for _____ of coverage.

### Sales Agreement

**Payment.** You promise to pay the principal amount of $ 26,531.00 plus finance charges accruing on the unpaid balance at the rate of 14.2% per year from the date of this Contract until paid in full. Finance charges accrue on a 365 day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the Truth-in-Lending Disclosures. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the Itemization of Amount Financed.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of $ _____ if you pay this Contract in full before we have earned that much in finance charges.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $ 25.00

### Assignment

This Contract and Security Agreement is assigned to

CAPITAL ONE AUTO FINANCE _____, the Assignee, phone

945-9875 _____

This assignment is made
☒ under the terms of a separate agreement made between the Seller and Assignee.
☐ under the terms of the Assignment by Seller section on page 2.

☐ This Assignment is made with recourse.

By: _____ Date 01/18/12

### Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost. Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the protection(s). If no coverage or charge is shown for an item, you have declined any such coverage we offered.

☒ Service Contract
Term 72 MOS / 100,000 MILES
Price $ 2,441.00
Coverage NISSAN ESC

☒ Gap Waiver or Gap Coverage
Term 72 MOS
Price $ 749.00
Coverage EXPRESS AUTOGAP

☐ _____
Term _____
Price $ _____
Coverage _____

By: _____ Date 01/18/12

By: _____ Date 01/18/12

### Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

### Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

By: _____ Date 01/18/12

**Notice to the Buyer:** 1. Do not sign this Contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the Contract you sign. 3. Under the law you have the right to pay off in advance the full amount due and to obtain a partial refund of the Finance Charge.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

Buyer: _____ Date 01/18/12

By: _____ Date 01/18/12

By: _____ Date 01/18/12

Retail Installment Contract MO
Bankers Systems ™
Wolters Kluwer Financial Services © 1995, 2009

## Additional Terms of the Sales Agreement

**Definitions.** "Contract" refers to this Retail Installment Contract and Security Agreement. The pronouns "you" and "your" refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "we", "us" and "our" refer to the Seller and any entity to which Seller may transfer this Contract. "Vehicle" means each motor vehicle described in the Description of Property section. "Property" means the Vehicle and all other property described in the Description of Property and Additional Protections sections.

**Purchase of Property.** You agree to purchase the Property from us, subject to the terms and conditions of this Contract. Seller will make any repairs or additions to the Vehicle except as noted in the Description of Property section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The "Total Sale Price" is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the Truth-in-Lending Disclosures assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

**Prepayment.** You may prepay this Contract in full or in part at any time. See Minimum Finance Charge section. Any partial prepayment will not excuse any later scheduled payments. A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**Governing Law and Interpretation.** This Contract is governed by the law of Missouri and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** From time to time you agree we may monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to any phone number(s) you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
- You fail to make a payment as required by this Contract.
- We believe the prospect of payment, performance, or the ability to realize upon the collateral is significantly impaired.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees not in excess of 15% of the unpaid debt after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Right to Cure.** If you are in default on this Contract due only to your failure to make a required payment, then you may have a right to cure the default. If you are in default and this right applies, we will send you a written notice describing your right to cure and the amount due and date of the payment you must make to cure the default. This paragraph and your right to cure will not apply to any default other than your failure to make a required Contract payment.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract, subject to any right to cure that you may exercise. Those remedies include:
- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the rate described in the Payment section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:
- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- Except when in use, the Property will be located at your address set forth in this Contract.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the Insurance Disclosures section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

Unless you otherwise evidence of the insurance coverage required by this Contract, we may purchase insurance at your expense to protect our interests in the Property. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Property. You may later cancel any insurance purchased by us, but only after providing evidence that you have obtained insurance as required. If we purchase insurance for the Property, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability.

## Notices

**Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Si compra un vehículo usado: La información que se adherida en la ventanilla forma parte de este contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

---

Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

**Emissions Inspection Notice.** If the vehicle is subject to Missouri emissions inspection and the Seller sells it to you without prior inspection and approval, you may: (1) return the Vehicle within 10 days, provided it has no more than 1,200 additional miles since the time of sale, to have the Seller repair the Vehicle and provide an emissions certificate and sticker within five working days if the Vehicle fails, upon inspection, to meet the emissions standards, or (2) enter into any mutually acceptable agreement with the Seller.

## Third Party Agreement

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the Description of Property section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

By: _____  Date: _____

## Assignment by Seller

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract.

(Separate Agreement: If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:
- This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
- The statements contained in this Contract are true and correct.
- The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
- This sale was completed in accordance with all applicable federal and state laws and regulations.
- This Contract is valid and enforceable in accordance with its terms.
- The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
- This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
- A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
- The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.
- Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of nonpayment or nonperformance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compromise or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

**Unless otherwise indicated on page 1, this Assignment is without recourse.**

**With recourse.** If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

Retail Installment Contract MO
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2009

# EXHIBIT 2

# MISSOURI DEPARTMENT OF REVENUE
## *Notice of Lien Application*

Record
Lookup

Change
Password

View
History

Contact
DOR

Step By
Step
Instructions

Logout

### Record Lookup Results

| Year | Make | VIN/HIN |
|---|---|---|
| 2012 | NISS | 1N4AL2AP8CN456067 |

### Notice Of Lien-DB2

#### Owner Information

Owner's Name Wheelington Tracey M &/ Terry D
Street Address 5512 NW 86 Ct
City Kansas City
State MO
Zip Code 64154

#### Vehicle Information

Year 2012
Make NISS
VIN/HIN 1N4AL2AP8CN456067
Vehicle Type Passenger Vehicle
Control Number 2841001S
Previous Title Number
Purchase Date 2012-01-18
Receipt Date 2012-01-19

#### Lienholder Information

Lien Date
Lienholder Name Capital One Auto Fin
Street Address PO Box 255605
City Sacramento
State CA
Zip Code 95865

### Title Record

#### Owner Information

Owner's Name Wheelington Tracey M & Terry D Tod Gos
Street Address 5512 NW 86th Ct
City Kansas City
State MO
Zip Code 64154
County PLATTE

#### Vehicle Information

Year 2012
Make NISS
VIN 1N4AL2AP8CN456067
Vehicle Type Passenger Vehicle
Title Number TPG98477
Title Issue Date 03/26/2012
Title Type Original
Horsepower 17
Cylinders
Odometer 0000053
Odometer Code
Brand
Purchase Date 01/18/2012

#### Lienholder Information

##### First Lienholder

Lien Date 01/18/2012
Lienholder Name CAPITAL ONE AUTO FIN
Street Address PO BOX 255605
City SACRAMENTO
State CA
Zip Code 95865-5605

### Notice Of Sale

#### Owner Information

Owner's Name TRACEY M WHEELINGTON
Street Address 5512 NW 86TH CT
City KANSAS CITY
State MO
Zip Code 64154
Purchase Date 01/18/2012

CAPONE   1N4AL2AP8CN456067                              MO

# EXHIBIT 3

Advertisement

# 2012 Nissan Altima Pricing Report



**Style:** 2.5 Sedan 4D
**Mileage:** 181,250

## Sell To Private Party



**Private Party Value** (Good Condition)
**$4,631**

Fair Condition · Very Good Condition · Excellent Condition

PRIVATE PARTY RANGE

**Private Party Values valid for your area through 07/06/2017
Good Condition**

## Vehicle Highlights

Fuel Economy:
City 23/Hwy 32/Comb 27 MPG

Max Seating: 5

Doors: 4

Engine: 4-Cyl, 2.5 Liter

Drivetrain: FWD

Transmission: Automatic, CVT

EPA Class: Midsize Cars

Body Style: Sedan

Country of Origin: Japan

Country of Assembly: United States

## Your Configured Options

Our pre-selected options, based on typical equipment for this car.

Case 2:16-bk-08057-DPC    Doc 39    Filed 07/07/17    Entered 07/07/17 13:47:54    Desc
Main Document        Page 13 of 16



4-Cyl, 2.5 Liter

✓ Black

## Transmission

Automatic, CVT

## Drivetrain

FWD

## Braking and Traction

Traction Control
Vehicle Dynamic Control
ABS (4-Wheel)

## Comfort and Convenience

Anti-Theft System
Keyless Start
Air Conditioning
Power Windows
Power Door Locks
Cruise Control

## Steering

Power Steering
Tilt Wheel

## Safety and Security

Dual Air Bags
Side Air Bags
F&R Head Curtain Air Bags

## Wheels and Tires

Steel Wheels

Case 2:16-bk-08057-DPC    Doc 39    Filed 07/07/17    Entered 07/07/17 13:47:54    Desc
Main Document        Page 14 of 16



**Kelley Blue Book® Trade-in Value** - This is the amount you can expect to receive when you trade in your car to a dealer. This value is determined based on the style, condition, mileage and options indicated.

**Trade-In Range** - The Trade-In Range is Kelley Blue Book's estimate of what you can reasonably expect to receive this week based on the style, condition, mileage and options of your vehicle when you trade it in to a dealer. However, every dealer is different and values are not guaranteed.

**Kelley Blue Book® Private Party Value** - This is the starting point for negotiation of a used-car sale between a private buyer and seller. This is an "as is" value that does not include any warranties. The final price depends on the car's actual condition and local market factors.

**Private Party Range** - The Private Party Range is Kelley Blue Book's estimate of what you can reasonably expect to receive this week for a vehicle with stated mileage in the selected condition and configured with your selected options, excluding taxes, title and fees when selling to a private party.

**Excellent Condition** - 3% of all cars we value. This car looks new and is in excellent mechanical condition. It has never had paint or bodywork and has an interior and body free of wear and visible defects. The car is rust-free and does not need reconditioning. Its clean engine compartment is free of fluid leaks. It also has a clean title history, has complete and verifiable service records and will pass safety and smog inspection.

**Very Good Condition** - 23% of all cars we value. This car has minor wear or visible defects on the body and interior but is in excellent mechanical condition, requiring only minimal reconditioning. It has little to no paint and bodywork and is free of rust. Its clean engine compartment is free of fluid leaks. The tires match and have 75% or more of tread. It also has a clean title history, with most service records available, and will pass safety and smog inspection.

**Good Condition** - 54% of all cars we value. This car is free of major mechanical problems but may need some reconditioning. Its paint and bodywork may require minor touch-ups, with repairable cosmetic defects, and its engine compartment may have minor leaks. There are minor body scratches or dings and minor interior blemishes, but no rust. The tires match and have 50% or more of tread. It also has a clean title history, with some service records available, and will pass safety and

.
It's crucial to know your car's true condition when you sell it, so that you can price it appropriately. Consider having your mechanic give you an objective report.

Case 2:16-bk-08057-DPC    Doc 39    Filed 07/07/17    Entered 07/07/17 13:47:54    Desc
Main Document    Page 15 of 16

needs servicing, but is still in safe running condition and has a clean title history. The paint, body and/or interior may need professional servicing. The tires may need replacing and there may be some repairable rust damage.

**Search:** | Find car values or features | 🔍

FAQ | Contact Us | About Us | Careers | Corporate | Advertising | Media | Site Map | Mobile | KBB Portugal

Follow Us

© 1995-2017 Kelley Blue Book Co.®, Inc. All rights reserved. **Copyrights & Trademarks** | **Terms of Service** | **Privacy Policy** | **Linking Policy** | **Ad Choices**

© 2017 Kelley Blue Book Co., Inc. All rights reserved. 6/30/2017-7/6/2017 Edition for California 94565. The specific information required to determine the value for this particular vehicle was supplied by the person generating this report. Vehicle valuations are opinions and may vary from vehicle to vehicle. Actual valuations will vary based upon market conditions, specifications, vehicle condition or other particular circumstances pertinent to this particular vehicle or the transaction or the parties to the transaction. This report is intended for the individual use of the person generating this report only and shall not be sold or transmitted to another party. Kelley Blue Book assumes no responsibility for errors or omissions. (v.17070)